**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC, | |
| Plaintiff, | Civil Action No. <u>2:25-cv-00661</u> |
| V. | |
| UAB GURTAM, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("<u>Fleet Connect</u>" or "<u>Plaintiff</u>") files this complaint against UAB Gurtam ("Gurtam" or "<u>Defendant</u>") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

<u>**NATURE OF THE ACTION**</u>

1.    This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "<u>Asserted Patents</u>"):

| | Patent Number | Title | Available At |
|---|---|---|---|
| 1 | 7,206,837 | Intelligent Trip Status Notification | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837 |
| 2 | 7,593,751 | Conducting Field Operations Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593751 |
| 3 | 6,961,586 | Field Assessments Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586 |
| 4 | 8,494,581 | System and Methods for Management of Mobile Field Assets *via* Wireless and Held Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581 |
| 5 | 6,647,270 | Vehicletalk | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270 |
| 6 | 7,092,723 | System and Method for Communicating Between Mobile Units | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7092723 |

| | Patent Number | Title | Available At |
|---|---|---|---|
| 7 | 7,741,968 | System and Method for Navigation Tracking of Individuals in a Group | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968 |

2.     Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

3.     Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.     Based on public information, Defendant UAB Gurtam is a corporation organized and existing under the laws of Lithuania, with its principal place of business located at Lithuania, Vilnus, LT-08200, Simbiocity, Ozo 12 A.

5.     Based on public information, Defendant engages in making, using, selling, offering for sale, importing, or otherwise providing, directly or indirectly, in the United States and in this State and District, products and services with features and functionalities that infringe the Asserted Patents.

## JURISDICTION AND VENUE

6.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not

alter" the alien-venue rule.).

9.     Defendant is subject to this Court's specific and general personal jurisdiction under due process because of Defendant's substantial business in this District, in the State of Texas, and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

10.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in the State of Texas, and in the United States, directly or through intermediaries, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

11.     Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products within this District.  For example, Defendant has placed and continues to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas.  Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to Texas residents and consumers.

12.     Upon information and belief, Defendant ships and causes to be shipped into this District infringing products and materials instructing its customers to perform infringing activities

to their employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

13.     Defendant markets, sells, and delivers the Accused Products in this District and has committed acts of infringement in this District.

14.     Defendant has committed acts of direct patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

15.     Defendant commits acts of infringement in this District, including, but not limited to, importing, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

16.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17.     Based upon public information, Defendant owns, operates, advertises, and/or controls the website https://gurtam.com/, through which it advertises, sells, offers for sale, provides, and/or educates customers about its products and services.

18.     Defendant makes, uses, causes to be used, sells, offers for sale, imports, provides, supplies, and/or distributes one or more "Gurtam" fleet management platform and tracking solutions, including, but not limited to, Wialon Fleet Management Solution (including Wialon Fleet Maintenance Management, Wialon Delivery Fleet Management, Wialon Smart Farming, Wialon Driver Behavior Monitoring, Wialon Public transportation management, Wialon Fuel Monitoring system, Wialon Hosting, Wialon Vehicle Tracking system, etc.), Mobile & Web

Applications (such as Wialon, Wialon local, Logistics Mobile, Logistics Local, WiaTag, MGPS Tracer, Mobile Navigator, Mobile GPS, Hecterra, nimbus, Wia chat, gurtam maps, Fleetrun, Track Player, Eco Driving, iDriveSafe, etc.), Protocols & retranslators (such as Flespi Gateway, Wialon Combine, Wialon IPS, etc.), vehicle trackers (such as Teltonika MB Server, etc.), GPS-Trace Platform (including Forguard, Asset Tracking, Ruhavik, etc.), Wialon ELD Solution including Telematics Devices and ELD Tablets, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

19.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 7,206,837**

20.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

21.     For purposes of this Count I, the "Accused Products" include Wialon Fleet Management Solution (including Wialon Fleet Maintenance Management, Wialon Delivery Fleet Management, Wialon Lease Control, Wialon Smart Farming, Wialon Driver Behavior Monitoring, Wialon Public transportation management, Wialon Fuel Monitoring system, Wialon Hosting, Wialon Vehicle Tracking system, etc.), Mobile & Web Applications (such as Wialon, Wialon local, Logistics Mobile, Logistics Local, WiaTag, MGPS Tracer, Mobile Navigator, Mobile GPS, Hecterra, Nimbus, Wia chat, Gurtam maps, Fleetrun, Track Player, Eco Driving, iDriveSafe, etc.), Protocols & retranslators (such as Flespi Gateway, Wialon Combine, Wialon IPS, etc.), Vehicle trackers (such as Teltonika MB Server, etc.), GPS-Trace Platform (including Forguard, Asset

tracking, Ruhavik, etc.), Wialon ELD Solution including Telematics Devices and ELD Tablets, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

22.    The USPTO duly issued U.S. Patent No. 7,206,837 (the "'837 patent") on April 17, 2007, after full and fair examination of Application No. 10/287,151, which was filed November 4, 2002.

23.    Fleet Connect owns all substantial rights, interest, and title in and to the '837 patent including the sole and exclusive right to prosecute this action and enforce the '837 patent against infringers and to collect damages for all relevant times.

24.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '837 patent.

25.    The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

26.    The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.    Defendant has directly infringed one or more claims of the '837 patent by making,

using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

28.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '837 patent.

29.    For example, Defendant, when using the Accused Products, performed a method comprising: (i) receiving a location of a mobile communications device that is in transit to a destination; (ii) estimating the time-of-arrival bounds for said mobile communications device at said destination for a confidence interval based on: (a) said location, and (b) at least one historical travel time statistic; and (iii) sending the time-of-arrival bounds to said mobile communications device.

30.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 7,593,751

31.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

32.    For purposes of this Count II, the "Accused Products" include Gurtam fleet management application/software/website (including, but not limited to, Wialon Hosting, Wialon Fleet Maintenance Management, Wialon Delivery Fleet Management, Wialon Lease Control, Wialon Smart Farming, Wialon Driver Behavior Monitoring, Wialon Public transportation management, Wialon Fuel Monitoring system, Wialon Vehicle Tracking system, etc.), Gurtam Driver apps, Gurtam/Wialon ELD Solution, and other similar products and all of the prior models,

iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

33.    The USPTO duly issued U.S. Patent No. 7,593,751 (the "'751 patent") on September 29, 2009, after full and fair examination of Application No. 11/262,699, which was filed on October 31, 2005.

34.    Fleet Connect owns all substantial rights, interest, and title in and to the '751 patent, including the sole and exclusive right to prosecute this action and enforce the '751 patent against infringers and to collect damages for all relevant times.

35.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '751 patent.

36.    The claims of the '751 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

37.    The written description of the '751 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38.    Defendant has directly infringed one or more claims of the '751 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

39.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 6 of the '751 patent.

40.     For example, Defendant, when using the Accused Products, performed a method for managing data during a field operation using a handheld field data management device, comprising the steps of: providing a handheld field data management device to a user, said handheld field data management device configured to enable the user to manage data collected at a field operation location, wherein said field data management device includes: a memory containing at least one field data management program module for working with a microprocessor to process instructions enabling a handheld field assessment device user to find a field operation location, collect industry-specific data at the field operation location, and communicate in real-time with a remote server to transfer data to and from a remote server, obtain updated instructions or procedures, and for retrieving third party information useful for the field operation from the Internet; a microprocessor executing said at least one field data management program; a positioning module including GPS for determining handheld device location and configured to coordinate with mapping software to provide map directions to field operation locations; a display for viewing field related data, maps and third party information retrieved from the Internet; a user interface adapted for enabling the handheld data management device user to interact with said at least one field data management program; and a wireless communication module for providing communications between the handheld field assessment device and the remote server, and for providing communications with third party resources from the Internet in support of field operations; enabling the user to access instructions including mapped directions from at least one of said field data management program and said remote sever to assist the user in finding a field operation location based on the location of the handheld field data management device; enabling the user to access instructions from said

at least one field data management program to assist the user in collecting industry-specific data at the field operation location; and enabling the user to access instructions from said at least one field data management program to assist the user in communicating with a remote server using the handheld field data management device before, during and after the collection of industry-specific data at the field operation location.

41.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,961,586

42.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

43.     For purposes of this Count III, the "Accused Products" include Gurtam fleet management platforms/applications/softwares/websites, (including but not limited to Wialon Hosting, Wialon Fleet Maintenance Management, Wialon Delivery Fleet Management, Wialon Lease Control, Wialon Smart Farming, Wialon Driver Behavior Monitoring, Wialon Public transportation management, Wialon Fuel Monitoring system, Wialon Vehicle Tracking system etc.), Wialon-based ELD solution, Gurtam driver mobile apps, etc., and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

44.     The USPTO duly issued U.S. Patent No. 6,961,586 (the "'586 patent") on November 1, 2005, after full and fair examination of Application No. 09/955,543, which was filed on September 17, 2001.  A Certificate of Correction was issued on June 25, 2013.

45.     Fleet Connect owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

46.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '586 patent.

47.     The claims of the '586 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

48.     The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

49.     Defendant has directly infringed one or more claims of the '586 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

50.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 9 of the '586 patent.

51.     For example, Defendant, when using the Accused Products, performed a method of conducting a field assessment using a handheld data management device, comprising: providing a hand held data management device user performing as a field assessor access to a industry-specific

field assessment program module for enabling the field assessor to execute at least one of the following field assessments: construction industry project analysis, HVAC system analysis; project management, equipment readiness, system and equipment troubleshooting, remote inventory tracking and ordering, conducting legal investigations in the field, and multi-users remote function coordination; executing said program module to conduct the field assessment; providing field-specific information required by said program module for said program module to render data in support of said field assessment; and retrieving data through said handheld data management device in support of said field assessment.

52.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,494,581

53.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

54.     For purposes of this Count IV, the "Accused Products" include Gurtam fleet management platforms/applications/softwares/websites (such as Wialon Hosting, Wialon Fleet Maintenance Management, Wialon Delivery Fleet Management, Wialon Lease Control, Wialon Smart Farming, Wialon Driver Behavior Monitoring, Wialon Public transportation management, Wialon Fuel Monitoring system, Wialon Vehicle Tracking system, etc.), Gurtam Driver apps, Gurtam/Wialon ELD solution, etc., and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

55.    The USPTO duly issued U.S. Patent No. 8,494,581 (the "'581 patent") on July 23, 2013, after full and fair examination of Application No. 12/547,363, which was filed on August 25, 2009.

56.    Fleet Connect owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

57.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '581 patent.

58.    The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

59.    The written description of the '581 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

60.    Defendant has directly infringed one or more claims of the '581 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

61.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 21 and 22 of the '581 patent.

62.    For example, Defendant's Accused Products comprised an apparatus, comprising: means for establishing a two-way communication channel between a server and at least one handheld device located at a field geographically distant from the server; means for accessing a program stored at the server to enable an assessment at the field using the at least one handheld device; means for managing data collected at the field using the at least one handheld device responsive to program; means for determining a geographic location of the at least one handheld device; and means for enabling communicating the data collected at the field and the geographic location of the at least one handheld device between the at least one handheld device and other devices or the server, and further comprised means for enabling the at least one handheld device to identify service schedule requirements.

63.    For example, Defendant's Accused Products comprised an apparatus, comprising: means for establishing a two-way communication channel between a server and at least one handheld device located at a field geographically distant from the server; means for accessing a program stored at the server to enable an assessment at the field using the at least one handheld device; means for managing data collected at the field using the at least one handheld device responsive to program; means for determining a geographic location of the at least one handheld device; and means for enabling communicating the data collected at the field and the geographic location of the at least one handheld device between the at least one handheld device and other devices or the server, and further comprised means for enabling synchronization of a service schedule on the at least one handheld device with inventory data stored in the server.

64.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 6,647,270

65.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

66.    For purposes of this Count V, the "Accused Products" include Wialon Fleet Management Solution (including Wialon Fleet Maintenance Management, Wialon Delivery Fleet Management, Wialon Smart Farming, Wialon Driver Behavior Monitoring, Wialon Public transportation management, Wialon Fuel Monitoring system, Wialon Hosting, Wialon Vehicle Tracking system, etc.), Mobile & Web Applications (such as Wialon, Wialon local, Logistics Mobile, Logistics Local, WiaTag, MGPS Tracer, Mobile Navigator, Mobile GPS, Hecterra, nimbus, Wia chat, gurtam maps, Fleetrun, Track Player, Eco Driving, iDriveSafe, etc.), Protocols & retranslators (such as Flespi Gateway, Wialon Combine, Wialon IPS, etc.), vehicle trackers (such as Teltonika MB Server, etc.), GPS-Trace Platform (including Forguard, Ruhavik, etc.), Wialon ELD Solution including Telematics Devices and ELD Tablets, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

67.    The USPTO duly issued U.S. Patent No. 6,647,270 (the "'270 patent") on November 11, 2003, after full and fair examination of Application No. 09/659,074, which was filed September 11, 2000.

68.    Fleet Connect owns all substantial rights, interest, and title in and to the '270 patent, including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

69.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '270 patent.

70.    The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications and tracking systems.

71.    The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

72.    Defendant has directly infringed one or more claims of the '270 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

73.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '270 patent.

74.    For example, Defendant's Accused Products comprised a system for transmitting voice or data communications comprising a plurality of data packets between a plurality of remote units, each remote unit having a unique identifier; whereby each remote unit includes: a memory for storing a unique identifier; a transceiver for receiving a wireless communication and downconverting said received communication from RF to baseband, and for upconverting a baseband communication to RF for transmission as a transmit wireless communication; a GPS

receiver, for outputting a position signal; a microprocessor, for receiving said position signal and said downconverted communication, and for generating said baseband communication; whereby said microprocessor generates said baseband communication by constructing said data packets from a plurality of data fields, including sender information and receiver information; whereby said sender information includes: the unique identifier of the sender, and information derived from said position signal; and whereby said receiver information includes: the address of the desired remote unit.

75.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,092,723

76.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

77.     For purposes of this Count VI, the "Accused Products" include Wialon Fleet Management Solution (including Wialon Fleet Maintenance Management, Wialon Delivery Fleet Management, Wialon Smart Farming, Wialon Driver Behavior Monitoring, Wialon Public transportation management, Wialon Fuel Monitoring system, Wialon Hosting, Wialon Vehicle Tracking system, etc.), Mobile & Web Applications (such as Wialon, Wialon local, Logistics Mobile, Logistics Local, WiaTag, MGPS Tracer, Mobile Navigator, Mobile GPS, Hecterra, nimbus, Wia chat, gurtam maps, Fleetrun, Track Player, Eco Driving, iDriveSafe, etc.), Protocols & retranslators (such as Flespi Gateway, Wialon Combine, Wialon IPS, etc.), vehicle trackers (such as Teltonika MB Server, etc.), GPS-Trace Platform (including Forguard, Ruhavik, etc.),

Wialon ELD Solution including Telematics Devices and ELD Tablets, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

78.    The USPTO duly issued U.S. Patent No. 7,092,723 (the "'723 patent") on August 15, 2006, after full and fair examination of Application No. 10/679,784, which was filed October 6, 2003.

79.    Fleet Connect owns all substantial rights, interest, and title in and to the '723 patent, including the sole and exclusive right to prosecute this action and enforce the '723 patent against infringers and to collect damages for all relevant times.

80.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '723 patent.

81.    The claims of the '723 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

82.    The written description of the '723 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83.    Defendant has directly infringed, and continue to directly infringe, one or more claims

of the '723 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

84.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '723 patent.

85.    For example, Defendant's Accused Products comprised a vehicle configured to transmit and receive voice or data communications having a plurality of data packets, the vehicle comprising: a GPS receiver; a remote unit, including; a memory for storing a unique identifier of the vehicle; an input for receiving a position signal from the GPS receiver, the position signal indicating the position of the vehicle; a transceiver for receiving a wireless communication from a sending remote unit, the received wireless communication including the unique identifier, said transceiver downconverting the received wireless communication from RF to a received baseband communication; a microprocessor for receiving the position signal and the received baseband communication; said microprocessor for generating a transmit baseband communication including data packets with data fields, the data fields including the unique identifier of the sending remote unit, information derived from the position signal, and an address of a desired remote unit; and said transceiver for upconverting the transmit baseband communication to RF for transmission as a transmit wireless communication to the desired remote unit.

86.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,741,968

87.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as

though fully set forth in their entirety.

88.     For purposes of this Count VII, the "Accused Products" include Wialon Fleet Management Solution (including Wialon Fleet Maintenance Management, Wialon Delivery Fleet Management, Wialon Lease Control, Wialon Smart Farming, Wialon Driver Behavior Monitoring, Wialon Public transportation management , Wialon Fuel Monitoring system, Wialon Hosting, Wialon Vehicle Tracking system, etc.), Mobile & Web Applications (such as Wialon, Wialon local, Logistics Mobile, Logistics Local, WiaTag, MGPS Tracer, Mobile Navigator, Mobile GPS, Hecterra, Nimbus, Wia chat, Gurtam maps, Fleetrun, Track Player, Eco Driving, iDriveSafe, etc.), Protocols & retranslators (such as Flespi Gateway, Wialon Combine, Wialon IPS, etc.), Vehicle Trackers (such as Teltonika MB Server, etc.), GPS-Trace Platform (including Forguard, Asset tracking, Ruhavik, etc.), Wialon ELD Solution including Telematics Devices and ELD Tablets,  and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

89.     The USPTO duly issued U.S. Patent No. 7,741,968 (the "'968 patent") on June 22, 2010, after full and fair examination of Application No. 12/143,707, which was filed on June 20, 2008.

90.     Fleet Connect owns all substantial rights, interest, and title in and to the '968 patent, including the sole and exclusive right to prosecute this action and enforce the '968 patent against infringers and to collect damages for all relevant times.

91.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '968 patent.

92.     The claims of the '968 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods for permissive navigational tracking where the sending party selectively transmits navigation data to a receiving party over a period of time.

93.     The written description of the '968 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94.     Defendant has directly infringed, and continue to directly infringe, one or more claims of the '968 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

95.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 4 of the '968 patent.

96.     For example, Defendant's Accused Products perform the method of keeping track of a group of individuals, said method comprising: receiving at a portable hand-held device current geographic location data pertaining to each of said individuals; displaying said received current geographic location data on said portable hand-held device; sending converging instructions to at least one of said individuals for allowing said individual to converge with said hand-held device; and generating ETAs pertaining to convergence between said one individual and said handheld device.

97.     Defendant had knowledge of the '968 patent at least as of the date Defendant was

notified of the filing of this action.

98.    Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe the '968 patent by inducing others to directly infringe the '968 patent.  Defendant has induced and continue to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '968 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '968 patent, including, for example, claim 4.

99.    Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users.  Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '968 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '968 patent.  Defendant's inducement is ongoing.

100.    Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '968 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '968 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than

ones that infringe one or more claims of the '968 patent, including, for example, claim 4. The special features constitute a material part of the invention of one or more of the claims of the '968 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

101.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Fleet Connect's patent rights.

102.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

103.    Defendant's direct infringement of the '968 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

104.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **DEMAND FOR JURY TRIAL**

105.    Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

106.    WHEREFORE, Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

  a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.   A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '968 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '968 patent by such entities;

c.   Judgment that Defendant accounts for and pays to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

d.   Judgment that Defendant's infringement of the '968 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>June 25, 2025</u>                    Respectfully submitted,

                                        By: <u>/s/ James F. McDonough, III</u>

                                        C. Matthew Rozier (CO 46854) *
                                        **ROZIER HARDT MCDONOUGH PLLC**
                                        1500 K Street, 2nd Floor
                                        Washington, District of Columbia 20005
                                        Telephone: (404) 779-5305, (202) 316-1591
                                        Email: matt@rhmtrial.com

                                        Jonathan Hardt (TX 24039906) *
                                        **ROZIER HARDT MCDONOUGH PLLC**
                                        712 W. 14th Street, Suite A
                                        Austin, Texas 78701
                                        Telephone: (210) 289-7541
                                        Email: hardt@rhmtrial.com

                                        James F. McDonough, III (GA 117088) *
                                        **ROZIER HARDT MCDONOUGH PLLC**
                                        659 Auburn Avenue NE, Unit 254
                                        Atlanta, Georgia 30312
                                        Telephone: (404) 564-1866
                                        Email: jim@rhmtrial.com

                            ***Attorneys for FLEET CONNECT SOLUTIONS LLC***

                                                *Admitted to the Eastern District of Texas